EARL ROSS *v.* STATE OF INDIANA

[No. 1-1076A181. Filed August 3, 1977.]

*Vernon E. St. John,* of Lafayette, for appellant.

*Theodore L. Sendak,* Attorney General, *Kenneth R. Stamm,* Deputy Attorney General, for appellee.

ROBERTSON, C.J.—Earl Ross (Ross) appeals from a conviction under IC 1971, 14-2-3-8(2) (Burns Code Ed.)[1] in the Montgomery County Court of purchasing wild rabbits in violation of Discretionary Order W-10 of the Department of Natural Resources[2] and raises one issue:

Did the trial court err when it took judicial notice of Discretionary Order W-10 of the Department of Natural Resources?

We affirm.

IC 1971, 14-2-3-3 (Burns Code Ed.) empowers the Director of the Department of Natural Resources to impose certain regulations by issuing discretionary orders in accordance with the procedural guidelines contained in IC 1971, 4-22-2-1 through 4-22-2-11 (Burns Code Ed.). Section 11 provides, in part:

"Any such rule or regulation adopted, approved, recorded and published as herein provided shall be judicially noticed by all courts and agencies of this state and the official publication thereof as herein provided shall be prima facie evidence that said rule or regulation was adopted, approved, and filed as herein provided.

"Any such rule or regulation may be cited or pleaded by volume, page and section number without copying the same."

---

1. "(2) Any person who violates any provision of this act [14-2-1-1 — 14-2-8-5] or any discretionary order which pertains to the taking of deer or elk or the sale, purchase or trade, or the offer to sell, purchase or trade at any time any wild bird or mammal live or dead or the meat therefrom whether taken in this state or in some other state, and brought into this state except as otherwise provided in this act, shall be deemed guilty of misdemeanor, and upon conviction shall be fined in any amount of not less than one hundred dollars [$100] nor more than two hundred dollars [$200] and may be imprisoned for any term of not less than thirty [30] days nor more than six [6] months. * * * Each animal involved in the violation of this act or such discretionary order shall constitute a separate offense."

2. "(14-2-3-3)-44. Rabbit.—Closed season. 1. It shall be unlawful for any person to hunt, take, possess, sell, offer to purchase, or to ship, transport, carry, or deliver or receive for shipment, transportation, or carriage in any manner beyond the limits of this state any rabbit or any part thereof, except as otherwise may be provided by law. * * *"

Ross' argument may be summarized as follows: Before the court may take judicial notice of the regulation, Section 11 requires the State to plead the regulation by volume, page, and section number, or copy the regulation verbatim in the information. Otherwise, the State must prove the existence, contents, and authenticity of the regulation at trial. The State did none of these three alternatives, but the court took it upon itself to judicially know the regulation and its contents. Because the regulation was not properly before the court, a conviction based thereon is contrary to law.

Ross cites *Bowen v. Metropolitan Board of Zoning Appeals* (1974), 161 Ind. App. 522, 317 N.E.2d 193 for the proposition that courts may take judicial notice of administrative rules and regulations of state agencies only by reason of the provisions of IC 1971, 4-22-2-11, *supra.* We agree with that statement.

Section 11 states that the courts *shall* take judicial notice of such rules and regulations. In a separate paragraph Section 11 provides that the rule or regulation *may* be cited or pleaded by volume, page, and section number. Ross rewrites the section to make it read that the courts *may* take judicial notice of rules and regulations *if* they are pleaded by volume, page, and section number. He states no reason why the statute should be so construed, and he cites no authority for such a construction.

Although Section 11 is the basis for judicial notice of administrative rules and regulations of state agencies, we do not construe Section 11 to impose strict procedural limitations upon this power which the statute provides.

Our conclusion proceeds from a literal reading of the section and also from a review of the general requirements for informations and indictments. In *Noel v. State* (1973), 157 Ind. App. 338, 342, 300 N.E.2d 132, 134, this court stated:

"Indictments or affidavits need only be so certain and particular as to enable the court and jury to understand what is to be tried and determined and to fully inform the defendant of the particular charge he is required to meet."

In *Merry v. State* (1975), 166 Ind. App. 199, 335 N.E.2d 249, 256, this court again spoke on the subject:

"The form of the indictment or information must substantially comply with the form delineated in the statute. IC 1971, 35-3.1-1-2(e) (Burns Code Ed.). If the accused is specifically informed of the charge against him by the wording of a particular information or indictment, then the information or indictment substantially complies with the statute. [Citations omitted.]"

IC 1971, 35-3.1-1-2, *supra*, makes no reference to administrative regulations, but it does refer to citation of statutory provisions:

"(a) The indictment or information shall be in writing and allege the commission of a crime by: * * * (3) Citing the statutory provision alleged to have been violated except that *any failure to include such a citation or any error in such a citation shall not constitute grounds for reversal of a conviction where the defendant was not otherwise misled as to the nature of the charges against him*." (Emphasis added.)

IC 1971, 35-3.1-1-2, *supra*, further provides:

"(d) The indictment or information shall be a plain, concise and definite written statement of the essential facts constituting the crime charged. It need not contain a formal commencement, a formal conclusion or any other matter not necessary to such statement. *Neither presumptions of law, nor matters of which judicial notice is taken, need be stated.*" (Emphasis added.)

Ross does not allege that the absence of citation by volume, page, and section number in the information in any way misled him. Examination of the informations[3] convinces this court that the informations were sufficiently certain and particular to inform Ross and the trial court of the particular charges.

---

3. Each information reads, in part, as follows:

"Information. Violation of Discretionary Order of Director of Department of Natural Resources. IC 14-2-3-8(2). Purchasing Wild Rabbits. William F. Woodall, being duly sworn upon his oath, says: He is informed and verily believes that at and in the County of Montgomery, State of Indiana, on the 15th day of December, 1975, one Earl Ross did then and there violate the duly filed, promulgated and posted discretionary order number W-10 as revised, of the Director of the Indiana Department of Natural Resources in that said Earl Ross did purchase a wild rabbit from George Carr and Ernest Carr, then and there being contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State of Indiana."

Finally, we find no error in the court's action of taking judicial notice without request to do so. We quote from *Russell v. State* (1975), 163 Ind. App. 163, 322 N.E.2d 384, 386:

"[A]ppellant's contention that the court cannot take judicial notice of some item unless it is asked to do so by one of the parties is incorrect.

"In *United States v. Harris* (1964, C.A. 6th) 331 F.2d 600, 601, the court, in passing on matters of which it could take judicial notice, had this to say:

"'Nor is it necessary that the Court be requested to take judicial notice of a fact before it is authorized to do so. The Court may take judicial notice sua sponte. . . .'"

We hold that the trial court did not err when it took judicial notice of Discretionary Order W-10. The judgment is affirmed.

Affirmed.

Lowdermilk and Lybrook, JJ., concur.

NOTE—Reported at 365 N.E.2d 1231.